**Entered on Docket
October 07, 2010**

_Bruce A. Markell_
_____
**Hon. Bruce A. Markell
United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

\* \* \* \* \* \*

| | |
|---|---|
| In re: | Case No.: BK-S-09-13274-BAM |
| | Chapter 7 |
| BLUE PINE GROUP, INC., | |
| | Date: February 4, 2010 |
| | Time: 1:00 p.m. |
| Debtor. | |

## MEMORANDUM IMPOSING SANCTIONS

### I. Introduction

Blue Pine Group, Inc. (Blue Pine), the chapter 7 debtor in this case, is a Nevada corporation. It was conceived as a 50/50 venture between Humitech of Northern California, LLC (Humitech) and M&G Group Enterprises, Inc. (M&G). Humitech, based in California, is owned by John Pink and Adam Sweeney. M&G, based in Las Vegas, is owned by John and Brenda Grose.

Blue Pine's board of directors originally consisted of these four individuals. As with any corporation, the approval of Blue Pine's board of directors was required for Blue Pine to take certain fundamental actions, such as filing any bankruptcy. For reasons explored below, Blue Pine's board never authorized its bankruptcy filing. Once this became apparent, on Humitech's motion, the court dismissed the case June 10, 2009, reserving jurisdiction to impose sanctions against the parties responsible for the unauthorized filing. The court now awards costs and attorneys' fees to Humitech.

## II. Facts

Although initially the parties worked well together, soon after formation Blue Pine's owners found themselves in a dispute over Blue Pine's governance and operation. Each party believed in the purity of their actions. Money was diverted from some operations without notice or explanation. In an effort to break the logjam, in February of 2009 Humitech filed a lawsuit in California state court against John and Brenda Grose, M&G, and Blue Pine, alleging, among other things, conversion and fraud.

John Grose (Grose) retaliated by hiring David Winterton, a Las Vegas lawyer specializing in bankruptcy, to file bankruptcy for Blue Pine. Although Winterton and his law firm, David Winterton & Associates,[1] appears regularly in this court, the filing was fraught with error. Initially, on March 10, 2009, Winterton filed schedules and statements of financial affairs – but not an actual bankruptcy petition – for Blue Pine. Dkt. No. 1.[2] In partial explanation of his error and his haste, Winterton later declared he was told that Pink was "misappropriat[ing] . . . some assets" and "it was important to file the bankruptcy as soon as possible to protect the assets of" Blue Pine. Dkt. No. 56, p. 2. However, Winterton never explained how alleged misappropriation was a proper basis for a bankruptcy filing.[3]

Faulty filings were not Winterton's only problems. As it turned out, he also did not possess any evidence that Blue Pine had properly authorized any bankruptcy filing. In lieu of a signed and authenticated corporate resolution authorizing the filing, Winterton testified that on March 10, 2009, Hannah Irsfeld, a litigation attorney also working for Grose, told Winterton that Blue Pine had passed a corporate resolution authorizing the bankruptcy filing, and that Irsfeld

---

[1] All references to Winterton refer also to his law firm, David Winterton & Associates, which is jointly and severally liable for this sanction. *See* FED. R. BANKR. P. 9011(c)(1)(A) ("[A] law firm shall be held jointly responsible for violations committed by its partners, associates, and employees.").

[2] For reasons not well explained, the clerk of the court accepted this electronic filing, and assigned it a case number.

[3] As detailed below, Winterton never filed an actual petition in bankruptcy for Blue Pine until a week later.

1  had the resolution. Winterton relied on this statement, as well as Grose's assertion that Humitech
2  did not own any shares of Blue Pine (and thus apparently did not need to be consulted). Absent
3  from the information he had or that he asked for, however, was evidence of the notice leading to
4  the board of directors' meeting authorizing the filing or any evidence of a shareholders'
5  resolution regarding the bankruptcy or regarding the composition of the board of directors.

6  Winterton needed these documents for reasons beyond just general prudence. In this
7  district, when a corporate debtor files for bankruptcy, Local Rule of Bankruptcy Practice 1002(b)
8  requires the corporation to file a copy of the board of directors' resolution authorizing the filing.
9  All Winterton filed, however, was a "Declaration re: Electronic Filing of Petition." Dkt. No. 3.
10 In that document, Grose declared under the penalty of perjury that the filing of the petition was
11 properly authorized.[4]

12 Word of the filing – even though no bankruptcy was commenced thereby – traveled
13 quickly. On March 13, 2009, George Wailes, an attorney for Humitech, sent a letter to Winterton
14 objecting to the filing. In this letter, Wailes included Blue Pine's articles of incorporation, which
15 indicated that Pink, Sweeney, and the Groses were the initial directors. This letter also revealed
16 that Humitech owned 50% of Blue Pine, a fact unequivocally contradictory to what Grose and
17 Irsfeld had previously told Winterton, and called into serious question the filing of a bankruptcy
18 on the Groses' authority alone.

19 Winterton did not immediately respond to Wailes. On March 16, 2009, however, he did
20 receive a copy of a resolution purportedly "authorizing" the filing of Blue Pine's bankruptcy
21 petition. The paper presented was signed only by John and Brenda Grose, and not by Humitech,
22 or any of its shareholders or officers, or by Pink or Sweeney. Winterton then asked Grose and
23 Irsfeld about this apparent contradiction. Winterton testified that he was told that Blue Pine had
24 never formally issued any shares of common stock, and that this meant that Humitech was not a
25 Blue Pine shareholder. In explanation of the lack of signatures of Pink or Sweeney, Grose and
26 Irsfeld told Winterton that Sweeney and Pink had previously been removed as Blue Pine

27 ─────────────
28     [4]As discussed below, Blue Pine never passed a valid resolution authorizing the filing.

directors.[5]  Winterton did not demand any written evidence of these assertions.  Apparently, he believed that the oral discussions were sufficient for him to proceed without further investigation, notwithstanding Wailes' letter and its enclosures.

And proceed he did.  Undeterred by Wailes' revelations, on March 16 and 17, 2009 Winterton filed amended schedules and statements of financial affairs for Blue Pine, as well as a Disclosure of Compensation of Attorney for Debtor form.  Dkt. Nos. 5, 7.  As a petition is required to commence a bankruptcy case, 11 U.S.C. § 301, however, he still had no bankruptcy case.  But this was put to rest on March 17, 2009 when Winterton finally filed a chapter 7 bankruptcy petition.  Grose signed the petition for Blue Pine, averring under the penalty of perjury that he had "been authorized to file this petition . . .".  Dkt. No. 7, p. 3.  Winterton also signed the bankruptcy petition as Blue Pine's attorney.

In furtherance of Grose's additional instructions, on April 10, 2009, Winterton filed an adversary proceeding on Blue Pine's behalf against Pink and Humitech, containing many of the same allegations that Humitech had made against the Groses, M&G and Blue Pine in Humitech's California state court litigation.  Winterton did not consult with the chapter 7 trustee before filing this adversary proceeding, and the complaint is silent as to any interest the trustee might have in the litigation.

After attempting to communicate with Winterton, Humitech filed a motion to dismiss the bankruptcy case on April 24, 2009, arguing that Blue Pine's board of directors had never authorized Blue Pine's filing.  The motion detailed Wailes' numerous attempts to convey to Winterton that Winterton did not have the authority to file a case on behalf of Blue Pine, as well as Humitech's numerous requests to Winterton to dismiss the case, given the documents they had presented to Winterton showing Winterton's lack of authority to commence the case.

After needless discovery disputes, the court heard Humitech's motion on June 10, 2009.  Winterton argued that Pink and Sweeney were not directors, and thus the petition had been

---

[5]Removing directors would have required a properly noticed meeting of the board of directors and enough directors to constitute a quorum.  As it turns out, neither of these requirements were met.

-4-

validly authorized.  The uncontroverted evidence showed, however, that Pink had never been sent, and never received, any notice of the shareholders' meeting at which he was supposed to have been removed as a director.  As a consequence, without more, no actions taken at that shareholders' meeting were valid, especially the purported removal of Pink as a director.   Pink thus remained as a director, and the resolution signed only by John and Brenda Grose without notice to Pink was ineffective to authorize Blue Pine's filing.  This meant that the court had no choice but to grant Humitech's motion to dismiss, and it did so on June 29, 2009.  The gap in the chain of authorization was also so patent that the court retained jurisdiction to hear any motion Humitech might bring under Federal Rule of Bankruptcy Procedure 9011 for Winterton's conduct in both filing and refusing to dismiss this matter.  That dismissal order was never appealed, and thus the factual findings upon which it is premised cannot be challenged.

On September 16, 2009, Humitech filed a motion seeking sanctions against Winterton and Grose for their conduct in this case.[6] After some procedural wrangling and more discovery disputes, the court held a hearing on the motion for sanctions on February 4, 2010.  At the hearing, the court heard testimony from Grose, Winterton, and Natalie Cox, an attorney at Kolesar & Leatham, the Nevada counsel for Humitech.

The court finds in favor of Humitech.  It sanctions Winterton $109,528.  This amount consists of Humitech's costs and attorneys' fees occasioned by Blue Pine's unauthorized filing.

### III.  Applicable Law

Rule 9011 regulates an attorney's filings with the bankruptcy court.  Of particular import to this case, Rule 9011 holds that:

> (b) By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, –
>
> (1)  it is not being presented for any improper purpose, such as to

---

[6] Humitech did not ultimately seek sanctions against Grose because Humitech released him from liability in a settlement of the California state court action on December 18, 2009.  As discussed below in Part VI, neither Blue Pine nor Winterton is a party to that settlement.

harass or to cause unnecessary delay or needless increase in the cost of litigation; . . . .

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; . . . .

Fed. R. Bankr. P. 9011 (adopting Fed. R. Civ. P. 11) (emphasis supplied).

This rule, based upon Rule 11 of the Federal Rules of Civil Procedure, "provides for the imposition of sanctions when a filing is frivolous, legally unreasonable, or without factual foundation, or is brought for an improper purpose." *Simpson v. Lear Astronics Corp.*, 77 F.3d 1170, 1177 (9th Cir. 1996) (citing *Warren v. Guelker*, 29 F.3d 1386, 1388 (9th Cir. 1994)). *See also Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1415-16 (9th Cir. 1990) (citing *Greenberg v. Sala*, 822 F.2d 882, 885 (9th Cir. 1987)). As this court has stated before: "An attorney's signature on a [petition] is tantamount to a warranty that the [petition] is well grounded in fact and 'existing law' (or proposes a good faith extension of the existing law) and that it is not filed for an improper purpose." *In re Aston-Nevada Ltd. P'ship*, 391 B.R. 84, 100 (Bankr. D. Nev. 2006) (quoting *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002)).

The attorney is not held to a subjective standard. "In considering sanctions under Rule 9011, the court measures the attorney's conduct 'objectively against a reasonableness standard, which consists of a competent attorney admitted to practice before the involved court.'" *Smyth v. City of Oakland* (*In re Brooks-Hamilton*), 329 B.R. 270, 283 (B.A.P. 9th Cir. 2005) (quoting *Valley Nat'l Bank v. Needler* (*In re Grantham Bros.*), 922 F.2d 1438, 1441 (9th Cir. 1991)).

Humitech alleges that Winterton not only did not engage in sufficient independent investigation after he received Mr. Wailes's letter, he turned a blind eye to every signal that the petition was not authorized and filed in bad faith. If true, this sort of reckless behavior is frivolous within the meaning of Rule 9011. *See Buster v. Greisen*, 104 F.3d 1186, 1190 (9th Cir. 1997) ("'Frivolous filings are those that are 'both baseless and made without a reasonable and competent inquiry.'") (quoting *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990) (en banc)); *Aston-Nevada*, 391 B.R. at 100-103.

The relevant inquiry into this type of frivolousness has two prongs: (1) whether the

attorney made a reasonable inquiry into the facts; and (2) whether the attorney made a reasonable investigation of the law. *Baermann v. Ryan* (*In re Ryan*), 411 B.R. 609, 615-16 (Bankr. N.D. Ill. 2009); *Home Savs. Ass'n of Kansas City, F.A. v. Woodstock Assocs. I, Inc.* (*In re Woodstock Assocs. I, Inc.*), 121 B.R. 238, 242 (Bankr. N.D. Ill. 1990). "The legal papers an attorney files in any case must be grounded in both a nonfrivolous legal theory and well-founded factual contentions and/or denials that, at a minimum, have a reasonable possibility of having evidentiary support after further investigation and discovery." *In re Am. Telecom. Corp.*, 319 B.R. 857, 867 (Bankr. N.D. Ill. 2004). Good faith alone is not enough to comply with the frivolousness clauses of Bankruptcy Rule 9011. *Id.* Indeed, "Rule 9011 imposes an affirmative obligation upon counsel to conduct a reasonable inquiry into both the law and the facts before advancing a particular position to the court." *In re Martin*, 350 B.R. 812, 817 (Bankr. N.D. Ind. 2006).

Mr. Winterton defended in part on the assertion that the need for relief, as stated to him by the client, justified his continuing efforts to defend the initial petition. This justification may seem to be absolute, but the rules of professional responsibility, applicable to all lawyers, underscore that it is not: a client's demands cannot alone support taking unjustified and unjustifiable positions. Rule 3.1 of Nevada's Rules of Professional Conduct states:

> A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law. . . .

This rule requires a lawyer to exercise independent judgment with respect to claims a client wishes to bring and to decline to pursue claims that are frivolous. As indicated in a leading treatise:

> [A] lawyer's duty to refrain from making frivolous contentions will result in conflict with the client if the client insists that the contentions nevertheless be made. When such conflicts arise, Model Rule 3.1 and practice rules such as Rule 11 of the Federal Rules of Civil Procedure dictate that the interests of the fair administration of justice must be given priority over the client's desires.

2 GEOFFREY C. HAZARD, JR., W. WILLIAM HODES & PETER R. JARVIS, THE LAW OF LAWYERING

§ 27.13, at p. 27-27 (3d ed.2008) (hereinafter, "*Hazard, Hodes & Jarvis*").

As a result, Mr. Winterton's opposition to the motion to dismiss, and all actions related to the existence of the case and the motion, effectively consisted of "later advocating" the propriety of the initial filing. This conduct ran afoul of Rule 9011, as it constitutes the presentation of a claim or contention within the meaning of Rule 9011. *See* GEORGENE M. VAIRO, RULE 11 SANCTIONS: CASE LAW, PERSPECTIVES AND PREVENTATIVE MEASURES §§ 4.02[d], 4.02[e][5] (3d ed., Richard G. Johnson, ed. 2003). *See also Buster v. Greisen*, 104 F.3d 1186, 1190 n. 4 (9th Cir. 1997) (violation of Rule 11 to advocate in federal court the propriety of baseless statements made in state court complaint that had been removed to federal court); *O'Brien v. Alexander*, 101 F.3d 1479, 1490 (2d Cir. 1996) (violation of Rule 11 to make misleading statements in oral argument that relate directly to a particular representation contained in a prior document that lawyer was then advocating).

Bankruptcy Rule 9011(c)(2) further provides for sanctions "limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." FED. R. BANKR. P. 9011(c)(2). "[T]he sanction may consist of[,] . . . if . . . warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation." *Id*. The Ninth Circuit has also stated that "[a] restitutionary award compensating the opposing party for unnecessary litigation expenses – as opposed to a punitive fine paid to the court – is a particularly appropriate sanction in cases involving manipulative petitions filed principally for purposes of delay and harassment." *Marsch v. Marsch* (*In re Marsch*), 36 F.3d 825, 831 (9th Cir. 1994). *See also Aston-Nevada*, 391 B.R. at 108.

### IV. Winterton's Conduct

Winterton lacked a reasonably sufficient basis for positions that he "later advocated" in this matter, as proscribed by Bankruptcy Rule 9011. Winterton's conduct cost Humitech $109,528 in expenses. These expenses were incurred obtaining dismissal of the bankruptcy,

protecting its interests in the California action, and in bringing this action for sanctions.[7] Winterton will therefore be sanctioned in that amount as restitutionary damages, payable to Humitech.

Winterton's decision to file this case was deficient in three respects. First, he did not have a copy of (and did not insist on seeing) the required notice of a shareholders' meeting of Blue Pine that would have been necessary to remove Pink and Sweeney as directors of Blue Pine, and which would then allow the Groses alone to vote to authorize filing for bankruptcy. Next, he did not have a copy of the required notice of the board of directors' meeting at which the bankruptcy was to be discussed. Finally and most seriously, Winterton filed without having a copy of the board of directors' resolution directing Blue Pine's bankruptcy filing, although Wailes had put him on notice that the filing was unauthorized. This type of valid resolution was necessary for any fundamental action, including the authorization to file for bankruptcy protection. Without these, and given what Wailes had provided Winterton after the first filing, Winterton did not have reasonable grounds to believe that he possessed the authority to file a bankruptcy on Blue Pine's behalf.

In his defense, Winterton argued that he reasonably relied on the assurance of Hanna Irsfeld – a litigation attorney – that Blue Pine had previously authorized the filing of Blue Pine's bankruptcy by approving the proper corporate resolutions. True enough; but this proposed defense ignores two crucial and interconnected questions. First, was Winterton's reliance on Irsfeld's advice reasonable after March 13, when Winterton received the letter and articles of incorporation of Blue Pine from Wailes and was confronted with evidence that Humitech, and thus Pink and Sweeney, owned 50% of Blue Pine? And second, was Winterton's continued presentation of his position and later advocacy of the propriety of the filings in reliance on

---

[7] Bankruptcy Rule 9011(c)(1)(A) explicitly authorizes the court to award "to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting . . . the motion." The court finds that the facts of this case, including the strong, if misguided, opposition presented by Winterton to the Rule 9011 motion make the award of attorneys' fees incurred in bringing and presenting the motion appropriate.

Irsfeld's representations reasonable through the court's June 10, 2009 dismissal of Blue Pine's case? Plainly, the answer to each question is no. This "later advocating" of an untenable position (and the corresponding failure to take corrective action, such as removing his inaccurate filings from the docket) was Winterton's primary failing in this matter and forms the basis for the restitutionary award to Humitech.

To quote *Hazard, Hodes & Jarvis*:

> If the lawyer carries out the client's instruction after becoming aware of the frivolous nature of the contentions, both the lawyer and the client can be civilly liable for sanctions under FRCP Rule 11, as well as subject to the exercise of the court's inherent supervisory powers.

*Id*. As this court has previously stated:

> To act on such frivolous claims, then, without independent investigation, was to succumb to the so-called "butler-style" of representation, under which the sequaciously servile lawyer does whatever the client wants and then cites that client's command as a shield to the improper actions. This style of lawyering, however, has no place in bankruptcy court or, for that matter, in any court.

*Aston-Nevada*, 391 B.R. at 103.

Mr. Winterton's defense was also premised in part on the fact that he is not a corporate lawyer, and that he was relying on the advice of Hannah Irsfeld as to corporate authorization. Notwithstanding that Ms. Irsfeld is a litigator, and not a corporate attorney, Mr. Winterton cannot rely on another lawyer's advice with impunity.[8] *See Pavelic & LeFlore v. Marvel Entm't Group*, 493 U.S. 120 (1989) (applying this standard to similar language found in Rule 11 of the Federal Rules of Civil Procedure and holding that an attorney cannot delegate his or her duty to validate the truth and legal reasonableness of papers filed with the court). *See also Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 546-47 (1991); *Triad Sys. Corp. v. Southeastern Express Co.*, 64 F.3d 1330 (9th Cir. 1995); Notes of Advisory Comm. on 1997

---

[8] Nevada law is not particularly complex on the relevant points. The contrary signals he was receiving from Wailes, Irsfeld, and the Groses should have, at a minimum, led him to research the relevant Nevada corporate law so that he could have some basis upon which to assess who was telling the truth. Lawyers are not given the privilege of assuming that their clients or other lawyers are unfailingly truthful.

amendment to Fed. R. Bankr. P. 9011 and Notes of Advisory Comm. on 1993 amendments to Fed. R. Civ. P. 11 ("The person signing, filing, submitting, or advocating a document has a nondelegable responsibility to the court, and in most situations should be sanctioned for a violation.").

Winterton's conduct in this case can be divided between his reliance on the representations of Irsfeld and Grose before he received notice from Wailes that Blue Pine was not authorized to file for bankruptcy, and the affirmative actions he took and failed to take after receiving the notice from Wailes. It was not unreasonable for Winterton to rely initially on Irsfeld's assurances. While Irsfeld was not a corporate attorney, and may not have fully understood the requirements which apply to a Nevada corporation, she was an officer of the court, and presumably vouchsafed matters before courts on a regular basis. But any reliance by Winterton on Irsfeld's representations was not reasonable after Winterton received notice on March 13, 2009 from Wailes, backed up by Blue Pine's organizational documents, that Irsfeld's earlier version of events was incorrect.

After Wailes's letter on March 13, 2009, Winterton knew, or should have known, Irsfeld's representations and assurances were at odds with Blue Pine's organizational documents, and that he did not have, and his clients and their other lawyers were not giving him, the complete picture behind Blue Pine's internal governance. Any further reliance by Winterton on Irsfeld's account without additional collaborating evidence was not reasonable.[9]

Yet, despite this knowledge, Winterton stubbornly persisted in his previous course of action. Not only did he fail to remove the filings he knew were improperly filed from the court's docket, he also raised the stakes on his losing bet by filing the bankruptcy petition on March 17, 2009, opposing Humitech's motion to dismiss, and taking actions in the California state court

---

[9]Winterton had actual knowledge that he was not authorized to file the case no later than April 15, 2009. On that day, Winterton attended the 341 meeting, and at that meeting, Grose acknowledged that Blue Pine had four directors, and that they had not all received notice of the purported meeting that removed Sweeney and Pink, and thus Blue Pine was not authorized to file.

action (as discussed below) as though this case was a proper bankruptcy filing.

Until the court actually dismissed the case, Winterton unwaveringly persisted in advocating the propriety of filings and positions he knew, or should have known, to be improper, and this conduct was a violation of FED. R. BANKR. P. 9011.[10]  Thus, Winterton is responsible for all actions that Humitech took after March 13, 2009 to oppose his misguided handling of this matter and his advocation of meritless positions.  These improper actions caused Humitech to incur $109,528 in expenses in attempting to have the bankruptcy dismissed and in protecting its rights in the California action.  Wailes' California firm, and Humitech's local counsel submitted complete billing records concerning the time they spent working to get this improperly filed case dismissed.

The injuries Winterton caused after becoming aware, or after he should have been aware, he did not have the authority to file this case arise generally from putting Humitech into a position in which it was forced to oppose all of Winterton's actions and filings.  These include not only Winterton's actions in the main case, but also the rogue adversary proceeding (for which Winterton did not have standing to file) Winterton filed against Pink and Humitech on April 10, 2009.

Additionally, Winterton's actions in the bankruptcy proceeding directly caused Humitech

---

[10]His pettifoggery is demonstrated by this excerpt from his trial brief, attempting to explain his diligence in determining Blue Pine's authority to file:
> The Motion to Dismiss was filed. The court allowed the hearing to take place under a shorten [*sic*] time period. This gave counsel a limited time to investigate into the matter. Mr. Grose gave a book to Mr. Winterton with about 35 different exhibits. His client also came down with phenomena [*sic*]. This hindered the investigation into the matter. There were a number of issues that needed to be addressed.

Blue Pine Trial Brief, Dkt. No. 88, p. 11.
There are many problems with this explanation.  First, the hearing on shortened time did not occur until well after the filing, by which time Winterton should have completed his investigation.  Similarly, Grose's delivery of 35 exhibits at that late stage also indicates Winterton's ineffectiveness in eliciting the necessary facts before he filed the petition, and after he had taken steps to defend it.  Finally, his vague assertion that "there were a number of issues that needed to be addressed" may be absolutely correct, but its interposition in a defense was absolutely useless: the issues were never comprehensively identified, let alone resolved.

to incur unnecessary expenses in the California action. Winterton requested a stay in the California action due to the bankruptcy case filed in Las Vegas. That motion was scheduled to be heard around the time this court was to hear Humitech's motion to dismiss, and Humitech did not plan on filing papers in the California action, so confident were they this court would grant its motion to dismiss the case. However, Winterton told Humitech that he intended to seek an extension of this court's hearing on Humitech's motion to dismiss. Because of this continued, unjustifiable effort to preserve the improper petition, Humitech felt compelled to file a reply in the California action in order to protect its interests. Ultimately, Winterton did not actually seek an extension, and this court dismissed the case, as noted above. The dismissal rendered Humitech's reply to Winterton's motion to stay the California action moot, but unfortunately not before Winterton caused Humitech to incur the expense of writing and filing the opposition.

It was necessary for Humitech to oppose each and every one of Winterton's efforts to advance the improperly filed bankruptcy, and the fees incurred by Humitech are directly attributable to Winterton's actions. Had Humitech not taken these actions, this improper bankruptcy case would have continued, and Humitech's interests would have been damaged on the basis of Winterton's inaccurate pleadings and continued advocacy of meritless positions. This wasted activity and time was exclusively the fault of Winterton and his blithe failure to follow the Local Rules of Bankruptcy Practice and the Federal Rules of Bankruptcy Procedure. If at any point he had simply examined the evidence in the record, done even the minimal research into Nevada corporate law, and compared this with what his clients told him, he would have understood that he had no authority to file the petition and continue to advocate that it was proper.

Humitech has submitted billing records showing that their actual and reasonable costs directly attributable to Winterton's improper conduct was $109,528,[11] and they are awarded that

---

[11] The billing records submitted show that Carr, McClellan, Ingersoll, Thomson & Horn incurred $87,812 and Kolesar & Leatham incurred $21,716.

-13-

amount from Winterton as compensation.[12]

## V. Authority to Sanction

Rule 9011 authorizes this admittedly large sanction. That rules states that when sanctions are initiated by motion:

> A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). It shall be served as provided in Rule 7004. The motion for sanctions may not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected, except that this limitation shall not apply if the conduct alleged is the filing of a petition in violation of subdivision (b). If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion. Absent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees.

FED. R. BANKR. P. 9011.

Initially, in its first communication, Humitech requested that Winterton remove the improperly filed schedules, and instead of complying, he filed a petition on March 17, 2009. As discussed above, it was improper under Rule 9011 for Winterton to file Blue Pine's petition. Winterton similarly never filed the required corporate resolution, also as discussed above. On September 16, 2009, Humitech filed its motion for sanctions, detailing Winterton's conduct in

---

[12] Winterton did not seriously contest the fees. Aside from his assertion that the fees were covered in the release, his entire complaint about the fees in his brief is as follows:
> The fees are not reasonable. There is a lot of duplicative work. The time spend [*sic*] on the issues is unreasonable. The billing statement is not clear as to the fees relating to the state court action and the bankruptcy. Counsel for Mr. Pink and Humitech admit they are asking for fees for the state court litigation in California wherein they agreed to bear their own costs.

Blue Pine Trial Brief, Dkt. No. 88, p. 13.

If Winterton believed the fees were not reasonable or duplicative, it was his burden to point that out with specificity to the court. He did not do so, apparently hoping the court would do his work for him. The court will not, and will not take these vague and insufficient allegations as anything other than an unsupported, scattershot attempt to call into question the detailed timekeeping records produced by Humitech's counsel.

the case that led it to request sanctions.[13] Service of the motion was proper under Bankruptcy Rule 7004. Because the improper filing was a bankruptcy petition, and all other procedural requirements of Rule 9011 have been complied with, Humitech's motion for sanctions is properly before this court.

As discussed above, the court has found that Winterton has violated FED. R. BANKR. P. 9011. This rule permits a bankruptcy court to "impose an appropriate sanction . . . limited to what is sufficient to deter repetition" of improper conduct. *Brooks-Hamilton*, 400 B.R. at 247.

The Bankruptcy Appellate Panel for the Ninth Circuit has held that when a bankruptcy court disciplines an attorney, the discipline imposed must be guided by three criteria: 1) the disciplinary process must be fair; 2) the evidence must support the finding; and 3) the penalty imposed must be reasonable. *Brooks-Hamilton*, 400 B.R. at 247 (citing *Price v. Lehtinen (In re Lehtinen)*, 332 B.R. 404 (9th Cir. B.A.P. 2005) and *Peugeot v. United States Trustee (In re Crayton)*, 192 B.R. 970, 978 (9th Cir. B.A.P. 1996)).

In practice, the fairness criteria means that the attorney must receive notice and be given an opportunity to be heard before he or she is sanctioned. *Brooks-Hamilton*, 400 B.R. at 251. Here, Winterton received notice that Humitech intended to seek sanctions against him, was given notice of the hearing, attended the hearing, and presented evidence and testimony in his defense.

---

[13] Because the improper filing was a petition, Humitech did not need to comply with the 21-day safe harbor provision of Rule 9011. *Dressler v. Seeley (In re Silberkraus)*, 336 F.3d 864, 868 (9th Cir. 2003) (considering Rule 9011(c)(1)(A) and finding that its "clear import . . . is that the mandatory 21-day safe harbor does not apply to the filing of the initial petition"). This difference between the Federal Rules of Civil Procedure and the Federal Rules of Bankruptcy Procedure exists because "the filing of a petition has immediate serious consequences, among which is the imposition of the automatic stay of section 362 of the Code." 10 COLLIER ON BANKRUPTCY ¶ 9011.06 (Alan Resnick & Henry Sommer, eds. 15th ed. rev. 2010).

Even if the rule applied, the court also finds that Humitech complied with the 21-day safe harbor requirement, even though not required to do so. On March 18, 2009, Humitech sent Winterton a letter demanding that the improperly filed petition be removed. The letter stated that Humitech would seek sanctions if the petition was not withdrawn and included a copy of the motion, with points and authorities. At no point did Winterton challenge that Humitech sent the letter and motion or that he received it. The fact that Winterton continued in his course of action, even with notice that Humitech would seek sanctions for his actions, reflects Winterton's indifference to, or willful violation of, Rule 9011.

Therefore, under *Brooks-Hamilton* Winterton had fair notice and an opportunity to participate in the disciplinary process.

Next, the evidence must support the finding. As it relates to Rule 9011, this means that "the bankruptcy court must find that [the attorney] filed papers that are frivolous . . . A frivolous paper is one that is both baseless and made without a reasonable and competent inquiry. That is, it is [not] well-grounded in fact . . . ." *Brooks-Hamilton*, 400 B.R. at 251-52 (citations omitted). Here, as discussed above, the court has found that Winterton both filed a petition and continued to advocate a position he should have known was not well grounded in fact, and as such, the court has ample evidence to support its finding that Winterton violated Rule 9011.

Finally, the sanctions must be reasonable. The Ninth Circuit Bankruptcy Appellate Panel has "adopted ABA standards as the means for determining reasonable sanctions," and "failure to consider such factors constitutes an abuse of discretion" upon an appeal directed to the Panel. *Brooks-Hamilton*, 400 B.R. at 251.[14] These ABA standards dictate that:

> To determine an appropriate sanction, the bankruptcy court should consider: (1) whether the duty violated was to a client, the public, the legal system or the profession; (2) whether the lawyer acted intentionally, knowingly or negligently; (3) whether the lawyer's misconduct caused a serious or potentially serious injury; and (4) whether aggravating factors or mitigating circumstances exist. Aggravating factors include considerations that justify an increase in the degree of discipline imposed, such as a prior disciplinary offense, multiple offenses, a pattern of misconduct, and refusal to acknowledge the wrongful nature of the conduct. Mitigating circumstances include considerations which justify a reduction in the degree of discipline, such as the absence of a prior disciplinary record, personal or emotional problems, inexperience in the practice of law, or a timely good faith effort to make restitution or to rectify the consequences of the misconduct.

---

[14]While the Bankruptcy Appellate Panel has acknowledged that there are "serious questions to the appropriateness" about requiring mechanical recitation and application of the ABA standards that are both discordant with the standard of review and that may not fit the facts or context of an appeal, the B.A.P. is "bound by its prior decisions" to apply the standards. *Brooks-Hamilton*, 400 B.R. at 238, n.18. This oddity is compounded by the fact that the Panel's decisions are not binding authority on bankruptcy courts, but yet supply the binding standard of review when the Panel reviews bankruptcy court decisions. On the other hand, if the appeal instead goes to a district court, the ABA standards are not necessarily binding. So while it would not be an abuse of discretion for a bankruptcy court to ignore the ABA standards if the appeal goes to district court, it would be an abuse of discretion if the same appeal goes to the Bankruptcy Appellate Panel. *See Brooks-Hamilton*, 400 B.R. at 238 at 253 (Markell, J., concurring).

*Id.* (citations omitted).

Winterton has violated his duties to the legal system by filing and later advocating a position he should have known was not well grounded in fact; he acted, negligently at best, after Wailes' communications should have led him to doubt his assumptions; his conduct caused over $100,000 of damage to Humitech; he has steadfastly failed to acknowledge the wrongful nature of his conduct; he has presented no evidence of personal or emotional problems; and has extensive experience practicing before this court.[15]  Therefore, the sanction is reasonable.

### VI. Release

Winterton points out that Humitech, Pink, John Grose, Brenda Grose, and M&G all signed a release in the California litigation on December 18, 2009. Dkt. No. 88-1.  In that release, Humitech and Pink agreed to release M&G's and the Grose's "attorneys."  Blue Pine was not a party to this agreement, and so Winterton is not in the class of "attorneys" that receive the benefit of the release.  He claims, however, that he filed at least one pleading indicating that he represented John Grose, and that this one pleading should be sufficient to bring him within the protective shade of the California release.

Winterton is incorrect.  At no point did he represent either John or Brenda Grose.  His only evidence of such alleged representation is an incidental pleading late in the case; he introduced no testimony from the Groses, no retainer agreement, or any other evidence.  Against the facts of this case, it is depressingly easy to hold that such a pleading was inaccurate and in line with Winterton's lack of care in practice.

But there is another, structural, reason that Winterton did not represent the Groses.  It is elemental that an attorney who represents a corporate debtor is not presumed to represent its owners.  *Waid v. Eighth Judicial Dist. Court ex rel. County of Clark*, 121 Nev. 605, 611 & n.10,

---

[15] A search of the court's ECF system shows that as of October 4, 2010, Winterton is listed as an attorney in 763 open or closed cases.  While various factors could over-report or under-report the attorney of record on the docket, this does demonstrate that Winterton is an experienced practitioner.

119 P.3d 1219, 1223 & n.10 (2005) ("Generally, a lawyer representing a corporate entity represents only the entity, not its officers, directors, or shareholders, and not any related entities such as parents, subsidiaries or sister companies."); *Moran v. Hurst*, 32 A.D.3d 909, 822 N.Y.S.2d 564 (2d Dep't 2006) (attorneys representing corporation did not have attorney-client relationship with corporation's principal); *Griffin v. Anslow*, 17 A.D.3d 889, 793 N.Y.S.2d 615 (3d Dep't 2005) ("corporate counsel is not in privity with the directors or shareholders of the corporation."). Although "[a] lawyer representing an organization may also represent any of its directors, officers, employees, members, shareholders, or other constituents, subject to the provisions of Rule 1.7," NEV. R. PROF. CONDUCT 1.13(g) (2010), counsel must obtain "informed consent, confirmed in writing" of such representation. NEV. R. PROF. CONDUCT 1.7 (2010); 11 U.S.C. § 327(a) (2010). *See* MODEL RULES OF PROF'L CONDUCT R. 1.7 cmt. 18 (2007) ("When representation of multiple clients in a single matter is undertaken, the information must include the implications of the common representation, including possible effects on loyalty, confidentiality and the attorney-client privilege and the advantages and risks involved.").

Winterton has not demonstrated that Blue Pine, or more importantly, Blue Pine's bankruptcy trustee, was consulted with respect to or actually consented to any representation of the Groses. He has not shown any consultation with or consent of the Groses. Accordingly, this court finds that no such consultation occurred, and thus Winterton did not intend to represent, and therefore did not represent, either of the Groses in anything other than an unimportant ministerial capacity of facilitating one filing in their name.[16] Winterton has thus failed to demonstrate that he is within the protected class under the December 2009 settlement.

## VII. Conclusion

Winterton's continued advocacy on behalf of positions he knew or should have known to be meritless cost Humitech $109,528. As explained above, the imposition of sanctions against

---

[16] And even this ministerial capacity may not have been properly authorized. *See Addley v. Beizer*, 423 S.E.2d 398 (Ga. Ct. App. 1992) (lawyer for corporation not thereby empowered to serve as lawyer for officers with respect to their individual interests). *See generally* NEV. R. PROF. CONDUCT 1.13(f); 1 *Hazard, Hodes & Jarvis*, *supra*, at § 17.14.

1  Winterton is proper.  Thus, Winterton is hereby ordered to pay to Humitech $109,528 in

2  restitutionary sanctions.[17]

4  Copies sent to:

NATALIE M. COX on behalf of Creditor HUMITECH OF NORTHERN CALIFORNIA, LLC
ncox@klnevada.com, bankruptcy@klnevada.com; kgregos@klnevada.com

HANNAH C IRSFELD on behalf of Plaintiff BLUE PINE GROUP, INC.
hirsfeld@irsfeldlaw.com, irsfeldlaw@irsfeldlaw.com

WILLIAM A LEONARD
biff7tte@mindspring.com, ca46@ecfcbis.com

U.S. TRUSTEE - LV - 7
USTPRegion17.LV.ECF@usdoj.gov

W. GEORGE WAILES on behalf of Creditor HUMITECH OF NORTHERN CALIFORNIA, LLC
gwailes@carr-mcclellan.com, gllewellyn@carr-mcclellan.com; mmcquaid@carr-mcclellan.com; sbajurin@carr-mcclellan.com

DAVID J. WINTERTON
david@davidwinterton.com, diane@davidwinterton.com

# # #

---

[17] To the extent this case has been closed or dismissed, the case is hereby reopened to allow entry of this order, and shall remain open for 30 days in order to allow parties to file any notice of appeal or Federal Rule 59 Motion.